IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03562-NRN

GERARD HALLAREN,

Plaintiff,

v.

GEICO CASUALTY COMPANY,

Defendant.

---

**ORDER ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Dkt. #13)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter is before the Court for all purposes upon the consent of the parties

(Dkt. #9), and the Order of Reference entered by Chief Judge Philip A. Brimmer on

January 8, 2021. (Dkt. #10.)

Mr. Hallaren originally brought three claims against Geico Casualty Company

("the Insurer"): (1) breach of contract for underinsured motorist ("UIM") benefits; (2)

statutory penalties for delay or denial under delay of denial under Colo. Rev. Stat. §§

10-3-1115 & -1116; and (3) common law bad faith breach of insurance. (*See* Dkt. #4.)

After Mr. Hallaren filed suit, he disclosed additional medical records and the Insurer

then tendered $100,000, the full UIM policy limits, thereby resolving the breach of

contract claim. (*See* Dkt. #13 at 2; Dkt. #25 at 3.)[1]

---

[1] All citations to docketed materials are to the page number in the CM/ECF header,
which sometimes differs from a document's internal pagination.

On January 26, 2021, the Insurer filed its Motion for Partial Judgment on the Pleadings, seeking summary adjudication on Mr. Hallaren's two extra-contractual claims. (Dkt. #13.) Mr. Hallaren filed his Response on February 16, 2021 (*see* Dkt. #25)[2] and the Insurer submitted its Reply on February 25, 2021. (Dkt. #22.)

On March 26, 2021, the Court denied the Motion for Partial Judgment on the Pleadings without prejudice and converted it into a Motion for Summary Judgment. (*See* Dkt. #28.) With permission from the Court (*see* Dkt. ##28, 30), Mr. Hallaren filed his Supplemental Response to the Insurer's Motion for Partial Judgment on the Pleadings on July 28, 2021. (Dkt. #32.) The Insurer filed its Supplemental Reply on August 17, 2021. (Dkt. #44.)

On August 20, 2021, the Court held a hearing on the now-converted summary judgment motion. (*See* Dkt. # 42.) At the invitation of the Court, the parties submitted further supplemental briefing and documents. (*See* Dkt. ##44 & 45.) Having considered the argument of counsel and the briefs submitted by the parties, and for the reasons discussed below, the Motion for Summary Judgment is **GRANTED.**

## BACKGROUND

This is an insurance coverage dispute. As of today, the Insurer has paid full policy limits on the claim, eliminating the claim for breach of contract. All that remains to be determined is whether there exist sufficient disputed facts to allow Mr. Hallaren's

---

[2] Plaintiff originally responded to the subject Motion at Dkt. #18. However, this version of the response contains redactions and was initially filed under restriction. The Court granted in part and denied in part Plaintiff's motion for leave to restrict (Dkt. #19), and required Plaintiff to file an unredacted version of the response (*see* Dkt. #24.) The unredacted version of Plaintiff's response is filed as Dkt. #25, so the Court refers to that version.

claims for bad faith and unreasonable delay of payment to go to the jury. Mr. Hallaren insists that there are disputed fact issues that need to go to a jury. The Insurer, by contrast, argues that the only evidence of bad faith or unreasonable delay are an unpaid settlement offer and the Insurer's claim evaluation underlying the settlement offer, which the Insurer argues, as a matter of law, cannot be evidence of an undisputed amount that an insurer is required to pay.

The case was removed to this Court after Mr. Hallaren sued the Insurer in Denver District Court. (Dkt. #1.) Unless otherwise noted, the following facts are undisputed.

On April 26, 2019, Mr. Hallaren was injured in a motorcycle crash. (Dkt. #25 at 2.) The at-fault driver was insured through Geico Indemnity Company with $25,000 in liability coverage. (*Id.*) With the Insurer's permission, Mr. Hallaren settled with Geico Indemnity Company for its per person liability limit of $25,000. (*Id.*)

Mr. Hallaren was insured through both Progressive and Geico Indemnity Company (as opposed to Geico Casualty Company, the defendant in this case). (*Id.*) Both policies contained a per person liability limit of $25,000 in underinsured motorist ("UIM") benefits and both Progressive and Geico Indemnity paid Mr. Hallaren their full policy limits ($50,000 total). (*Id.*)  Thus, Mr. Hallaren, pre-suit, received $75,000 in total—$25,000 from the tortfeasor's insurer and $50,000 from two policies that are not at issue in this case.

Mr. Hallaren was also insured through the defendant Insurer (Geico Casualty Company). The Insurer's policy has a per person liability limit of $100,000 in UIM benefits. Mr. Hallaren filed suit on November 2, 2020, by which time he had undergone

two surgeries related to the accident. (Dkt. #25 at 3.) As of that date, the Insurer had not paid any UIM benefits to Mr. Hallaren. (*Id.*)

Importantly, prior to receiving all of Mr. Hallaren's medical records, the Insurer had evaluated Mr. Hallaren's medical bills as $70,573.57. (*See* Dkt. #26 at 2.) The evaluation also estimated that Mr. Hallaren had suffered $20,000 in "Other Specials" and $40,000 for various categories of "Generals," which included estimates for pain and suffering. (*See* Dkt. ##26 at Dkt. #33-3.)[3] Based on these numbers, the Insurer evaluated the low end of the "full value" of Mr. Hallaren's claim as $93,154.61. As previously noted, Mr. Hallaren had already been paid out $50,000 from his other polices and $25,000 from the tortfeasor. When that amount is deducted from $93,154.61, the remainder is $18,154.61—which is the amount the Insurer in its own evaluation identified as the start of its negotiation range. (*See* Dkt. ##26, 33-3.) Notably, because Mr. Hallaren's medicals were only $70,573.57 and he had already been paid more than this from his other polices and the tortfeasor, *none* of the other amounts listed in the Insurer's claim evaluation were for undisputed medical bills—the $18,154.61 is comprised exclusively of estimated unliquidated future economic damages, such as future medical bills (the "Other Specials"), and non-economic damages for pain and suffering, or disfigurement. (*See* Dkt. ##22-1, 26, 33-3.)

The Insurer argues that the evaluation amounts for these categories are inherently subjective and thus cannot be "undisputed." Mr. Hallaren, however, argues that the evaluation demonstrates that the Insurer believed Mr. Hallaren's claims to have

---

[3] These documents remain under Level 1 restriction.

a some minimum worth—an undisputed amount—which should have been paid even if the full amount remained in dispute.

The Insurer made several settlement offers:

- On April 30, 2020, the Insurer offered $18,154.61 to settle Mr. Hallaren's claims. (*See* Dkt. ##26 at 2, 33-3.)

- On September 18, 2020, the Insurer increased its offer to $62,573.57. (*See* Dkt. ##13-1 at 3, 26-2.) On this same date, prior to sending the offer to Mr. Hallaren, the Insurer communicated to Mr. Hallaren's counsel that the offer included "20k in estimated costs," which was included in the offer because there were several records for "Evals and PT that didn't include bills" and that the amount was subject to change. (*See* Dkt. #22-1.)

- On October 1, 2020, the Insurer increased its offer to $65,000. (*See* Dkt. #13-1 at 8.) It is unclear from record whether any documentation from Mr. Hallaren spurred this increase in the settlement offer.

In his October 22, 2020 correspondence with the Insurer, Mr. Hallaren's attorney suggested that these offers meant the Insurer found Mr. Hallaren's claim to be worth *at least* $62,573.57 (put differently, that $62,573.57 of the claim was undisputed) and requested that the Insurer tender that payment. (Dkt. #13-1 at 3.) The Insurer, for its part, rejected Mr. Hallaren's counsel's characterization via written response sent that same day, noting that general or non-economic damages, by definition, cannot be undisputed given their "inherently subjective nature." (*Id.* at 6.) The Insurer also argued that settlement evaluations and offers are not admissions of liability or the worth of the claim. (*Id.*)

Mr. Hallaren sent further correspondence on October 27, 2020, writing, in part,

[w]e agree that non-economic damages are subjective. However, in this case Geico has assigned a value to those non-economic damages, $62,573.57, and then increased that value to $65,000. We understand that Geico is offering the latter number of $65,000 to settle and we are not interested in settling so we have not accepted the offer. Instead, we are asking that Geico tender the undisputed value of $62,573.57.

(*Id*.) The Insurer responded on October 28, 2020, emphasizing that the offers were "simply offers to compromise and settle a disputed claim." (*Id*. at 7.)

The applicable insurance policy provides that "the amount of the **insured's** recovery for [UIM] damages will be determined by agreement between the **insured** or his representative and us. The dispute may be arbitrated if an agreement cannot be reached." (Dkt. #44-1 at 15) (emphasis in original).

## LEGAL STANDARDS

### I.      Summary Judgment

The pending motion has been converted into a motion for summary judgment (*see* Dkt. #28), so Rule 56 of the Federal Rules of Civil Procedure governs. A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only

admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); *see also Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

A judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter, but to determine if there is a genuine issue for trial. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

## II.      Bad Faith – Statutory and Common Law

"Due to the special nature of the insurance contract and the relationship which exists between the insurer and the insured," an insurer owes a common law duty of good faith and fair dealing, whose breach may give rise to a separate cause of action arising in tort. *Goodson v. Am. Standard Ins. Co*, 89 P.3d 409, 414 (Colo. 2004) (quotation marks omitted). "Broadly speaking, '[t]his duty of good faith and fair dealing continues unabated during the life of an insurer-insured relationship, including through a lawsuit or arbitration between the insured and the insurer.'" *Rabin v. Fid. Nat. Prop. & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1112 (D. Colo. 2012) (quoting *Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010)).

Colorado recognizes both statutory and common law claims for bad faith breach of insurance contracts. A statutory claim, based on Colo. Rev. Stat. § 10-5-1115, requires a showing that the insurer acted unreasonably in delaying or denying owed insurance benefits. *Baker v. Allied Prop. & Cas. Ins. Co.*, 939 F. Supp. 2d 1091, 1107 (D. Colo. 2013) (citing *Vaccaro v. Am. Family Ins. Group*, 275 P.3d 750, 760 (Colo. App. 2012)). Common law bad faith, on the other hand, is a heightened standard and requires "proof of the insurer's knowledge or reckless disregard as to the validity of an insured's claim." *Id*. (internal citations omitted). Thus, a common law insurance bad faith claim requires the insured to sufficiently allege both that the insurer acted unreasonably under the circumstances and that the insurer knowingly or recklessly disregarded the validity of the insured's claim, while "the only element at issue in a statutory claim is whether an insurer denied [or delayed] benefits without a reasonable basis." *Fisher v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 990 (Colo. App. 2015) (*Fisher I*) (citations

omitted)*, aff'd State Farm Mut. Auto. Ins. Co. v. Fisher*, 418 P.3d 501, 506 (Colo. 2018) (*Fisher II*).

Both common law and statutory bad faith claims are evaluated objectively, based on industry standards. *Williams v. Owners Ins. Co.*, 621 Fed. Appx. 914, 919 (10th Cir. 2015). "The aid of expert witnesses is often required in order to establish objective evidence of industry standards." *Goodson*, 89 P.3d at 415. The fact that an insurer's reason for denying or delaying payment of a claim was "fairly debatable" weighs against finding that the insurer acted unreasonably. *Sanderson*, 251 P.3d at 1217; *Vaccaro*, 275 P.3d at 759. In cases where "an insurer maintains a mistaken belief that a claim is not compensable, it may still be within the scope of permissible challenge, even if the insurer's belief turns out to be incorrect." *Sanderson*, 251 P.3d at 1217. At the same time, an insurance company cannot simply escape liability for unjustified denials by framing it as a valuation dispute. "[F]air debatability . . . is not outcome determinative; it is a necessary but not always a sufficient condition for finding reasonableness." *Baker*, 939 F. Supp. 2d at 1111 (citing *Sanderson*, 251 P.3d at 1219).

In *Fisher II,* the Colorado Supreme Court declared that an insurer must make payment of covered undisputed benefits, even if other components or portions of an insured claim (for example, compensation for pain and suffering) may still be in dispute. *Fisher II*, 418 P.3d at 505. In that case, the defendant-insurer had conceded that $61,125.16 of the plaintiff's medical bills were reasonable, necessary, and causally related to the underlying accident, yet refused to pay the plaintiff the undisputed amount for medical bills because it disputed other portions of the plaintiff's claims. *Id.* at 503. Notably, *Fisher II* was decided only in the context of undisputed medical bills, which are

concrete, quantifiable expenses that cannot reasonably be disputed if they are reasonable, necessary, and causally related to the underlying accident. *See id.* No Colorado appellate court has expanded the *Fisher II* payment obligation beyond undisputed medical bills.

## ANALYSIS

The Insurer moves for summary judgment on Mr. Hallaren's statutory and common law bad faith claims arguing that such claims are necessarily premised on the Insurer's settlement offers, but settlement offers and their underlying evaluations do not and cannot, as a matter of law, constitute evidence of undisputed amounts owed.

As an initial matter, the Court finds that Mr. Hallaren plainly cannot rely on the Insurer's settlement offers to prove the existence of an undisputed amount. In *Fisher I,* the Colorado Court of Appeals unequivocally held that "Colorado law . . . prohibits the conclusion that [an insurance company]'s initial settlement offer represents an admission that the amount of the offer was the amount of benefits owed . . . ." 493 P.3d at 988 (citations omitted). Further, Colorado Rule of Evidence 408 prohibits the admission of a settlement offer to prove the "amount of a claim that was disputed as to validity or amount." Colo. R. Evid. 408; *see also Signature Dev. Cos., Inc. v. Royal Ins. Co. of Am.*, 230 F.3d 1215, 1223 (10th Cir. 2000) ("Compromise or settlement offers are not admission of liability.").

Mr. Hallaren's claims, however, rely on more than just the settlement offers. Mr. Hallaren argues that the Insurer's evaluation, which is separate and distinct from the settlement offer, demonstrates that there is some minimum, undisputed value (here, arguably $18,154.61) that the Insurer assigned to Mr. Hallaren's claim. Indeed, Mr.

Hallaren cites deposition testimony from the Insurer's Rule 30(b)(6) designees that the Insurer's insurance adjusters would never be authorized to offer less than the "starting point," or lowest point of the evaluation range. (Dkt. #32 at 3.) Thus, Mr. Hallaren argues, a jury should be allowed to determine whether the Insurer's refusal to tender at least $18,154.61, the "starting point" of the evaluation in this instance, constitutes bad faith under *Fisher II* because it shows that the Insurer recognizes that at least $18,154.61 of Mr. Hallaren's claim is undisputed.

The Insurer argues that the claim evaluation is part and parcel of the settlement process and thus inadmissible to prove the value of Mr. Hallaren's claim. The Insurer also argues that the *Fisher II* obligation to pay an undisputed amount is limited to concrete expenses, such as medical bills, which are easily determinable via documentation. Other contractual benefits, such as compensation for pain and suffering or the value of disfigurement, are inherently subjective. Thus, the Insurer argues, the *Fisher II* obligation to pay undisputed amounts cannot apply to these subjective damages categories because, absent agreement, the value is disputed until a jury (or an arbitrator) decides what the value of those claims are.

Colorado's appellate courts have not yet expressly ruled on whether a claim evaluation is admissible for the purpose of showing that some amount of subjective damages are undisputed, necessitating a *Fisher* payment. Reasonable people could find that claim evaluations should be admissible evidence in UIM first-party bad faith claims and apply *Fisher II* to non-economic or future economic damages. Without explicit guidance from a Colorado appellate court, this Court's role is to predict how the Colorado Supreme Court would rule.

In deciding a question of state law under such circumstances, a federal court's task is not to reach its own judgment regarding the substance of common law or of the interpretation of a Colorado statute. Instead, it is to ascertain and apply the state law by predicting what the state supreme court would do:

> The federal court must follow the most recent decisions of the state's highest court. Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do. In doing so, it may seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law. Ultimately, however, the Court's task is to predict what the state supreme court would do.

*Wade v. EMCASCI Ins.*, 483 F.3d 657, 665–66 (10th Cir. 2007) (citations and internal quotation marks omitted). In addition, federal courts seeking to apply a state rule of decision are generally reticent to expand state law without clear guidance from the state's highest court. It is not a federal court's place to expand state law beyond the bounds set by the highest court of the state. *Amparan v. Lake Powell Car Rental Cos.*, 882 F.3d 943, 948 (10th Cir. 2018).

In light of these principles, the Court considers whether the Colorado Supreme Court would permit the use of an insurer's claim evaluation of subjective damages as evidence to prove that a claim was undisputed, requiring a *Fisher*-type payment.

The Insurer argues that the Colorado Supreme Court decisively resolved this issue in *Sunahara v. State Farm Mutual Automobile Insurance Co.*, 280 P.3d 649 (Colo. 2012). However, the holding is not as express as the Insurer might hope. The *Sunahara* court noted that an insurer's reserves and settlement authority are not admissible evidence of the value of a UIM breach of contract claim. *Id.* at 656 (citing *Silva v. Basin Western, Inc.*, 47 P.3d 1184, (Colo. 2002)). The court extended this protection to the

insurance company's initial evaluation process because "liability assessments and similar cursory fault evaluations used by an insurance company to develop reserves and settlement authority are not reasonably calculated to lead to the discovery of admissible evidence," and "insurance companies have to be free to make internal assessments." *Id.* at 657. Further, "it would be absurd to protect the end result of the insurance company's initial evaluation process—the reserves and settlement authority—without also protecting the assessments that led to those numbers." *Id.*  But, as Mr. Hallaren points out, the *Sunahara* court also noted,

> Reserves and settlement authority—and, under our reasoning in this case, the liability assessments and fault evaluations underlying those figures as well—*might be relevant and reasonably calculated to lead to admissible evidence when a first-party plaintiff sues his or her insurance company for bad faith or for a declaratory judgment. Silva*, 47 P.3d at 1193. In bad faith and declaratory judgment actions, evidence of reserves and settlement authority could shed light on whether the insurance company adjusted a claim in good faith, or promptly investigated, assessed, or settled an underlying claim. *Id.* UIM actions differ from bad faith and declaratory judgment cases because, rather than defending its own actions, an insurance company in a UIM action must essentially defend the tortfeasor's behavior.

*Id.* at 657–58 (emphasis added). Mr. Hallaren reads the foregoing to mean that *Sunahara* left open the possibility that a plaintiff could use an insurer's underlying evaluation as evidence of bad faith conduct in first party claims. *See id.*

The Court finds Mr. Hallaren's argument goes too far. The language Mr. Hallaren relies on suggests only that the underlying evaluation is discoverable in bad faith cases. The dispute here is not about discoverability. Indeed, Mr. Hallaren received the claim evaluations in this matter. Instead, the question is whether the claim evaluation is itself admissible evidence of an undisputed amount that the insurer should have to pay, on threat of a bad faith finding, under the principal articulated in *Fisher II.* The mere fact

that information might be discoverable does not transform it into an admission that a plaintiff can present to the jury. *See Tuft v. Indem. Ins. Co. of N. Am.*, No. 19-CV-01827-REB-KLM, 2020 WL 8899950, at *3 (D. Colo. June 26, 2020) (quoting *Sunahara*, 580 P.3d at 656, and finding that claim evaluation was discoverable, and the defendant-insurer would not be prejudiced by the discovery because claim evaluation did not constitute an admission or a final, objective assessment to which an insurer may be held).

Here, Mr. Hallaren seeks to use the claim evaluation to show that the Insurer did not dispute the existence of at least some non-economic or future economic damages and further wants to use the evaluation to prove that the Insurer acted unreasonably is refusing to pay anything on the claim.

Consistent with the Colorado Supreme Court's reasoning in *Sunahara*, the Court finds that a claim evaluation is not admissible evidence of an undisputed amount that must be paid under an insurance policy. This is consistent with the recent decision by Magistrate Judge Mix in a factually similar case. *See Nyborg v. State Farm Mut. Auto. Ins. Co.*, No. 20-CV-01918-RM-KLM, 2021 WL 662305, at *6 (D. Colo. Feb. 19, 2021), *report and recommendation adopted*, No. 20-CV-01918-RM-KLM, 2021 WL 1115936 (D. Colo. Mar. 24, 2021). Relying on *Fisher I* and *Sunahara*, Judge Mix held that under Colorado law,

> evaluations and settlement authority do not bind insurers to the amount offered, nor do they constitute an undisputed amount which must be paid under the policy. Colorado law dictates further that "settlement authority does not constitute a 'final, objective assessment of a claims [sic] worth to which an insurer may be held'" and that "settlement authority reflect[s] the insurer's 'basic assessment of the value of a claim taking into consideration the likelihood of an adverse judgment, but do[es] not normally entail a

thorough factual and legal evaluation when routinely made as a claim analysis.'"

*Nyborg*, 2021 WL 662305 at *6 (quoting *Sunahara*, 280 P.3d at 656). Judge Mix also explained that, "[u]nlike economic damages such as those associated with [the plaintiffs'] medical bills, there is no sum certain to which an insured is entitled for non-economic damages, which is indicative of the fact that there was a 'legitimate dispute' over the value of such damages." *Id.* (citation omitted); *see also Baros v. Am. Family Ins.*, Case No. 2014CV33591 (Denver Dist. Ct., June 11, 2015) (describing non-economic damages as "inherently 'fairly debatable'") (filed at Dkt. #22-2.)

Judge Mix relied in part on the reasoning articulated in the Arizona Court of Appeals case *Voland v. Farmers Insurance Co. of Arizona*, 943 P.2d 808 (Ariz. App. 1997), which has been cited favorably by both the Colorado Supreme Court and the 10th Circuit Court of Appeals. *See Silva v. Basin W., Inc.*, 47 P.3d 1184, 1190 (Colo. 2002); *Signature Dev. Companies, Inc. v. Royal Ins. Co. of Am.*, 230 F.3d 1215, 1224 (10th Cir. 2000). Like Judge Mix, the Court finds *Voland* persuasive on the present issue.

In *Voland*, the defendant insurers offered to settle the plaintiff's UIM claim for $30,000, which they believed was the "fair value" of her claim. *Id.* at 810. The plaintiff responded that the amount offered was "without foundation," but demanded payment of that amount and said that the parties would "arbitrate the difference." *Id.* (internal quotations omitted). The insurers never paid the $30,000, which apparently constituted the insurers' evaluation of both economic and non-economic damages. *Id.*[4]

---

[4] It is worth noting that the plaintiff in *Voland* never demanded payment solely for medical bills and lost earnings (worth about $10,000), which were undisputed, and

The matter went to arbitration, and the plaintiff accepted a $60,000 arbitration award conditioned on her right to bring suit, in part, for the insurers' bad faith for failing to tender the $30,000 settlement offer for what the defendant had called the "fair value" of her claim. *Id.* The plaintiff argued that the $30,000 represented a "*minimum* 'fair value' of the claim" as determined by the insurers' claim adjusters. *Id.* (emphasis added). The *Voland* court rejected the plaintiff's argument, stating that the insurers' statement that they considered the "fair value" of her claim to be $30,000 "does not mean they acknowledged that was 'the minimal amount the insurer's own adjuster ha[d] evaluated as being owed to the insured.'" *Id.* at 811–812. The court explained that the insurer's $30,000 offer "was simply a proposal to compromise and resolve the claim, nothing more and nothing less. It represented the [insurers'] evaluation or best estimate, at that point in time, of what the trier (here, the arbitrators) might award." *Id.*

Ultimately, the *Voland* court held that the settlement offer was not binding on the insurers and did not set a "'floor' on what the ... [insurers] would ultimately have to pay." *Id.* at 812. Further, the court noted that "a personal injury claim is unique and generally not divisible or susceptible to relatively precise evaluation or calculation." *Id.* It stated that "[t]he 'pain and suffering'/general damage elements of a personal injury claim, for example, are inherently flexible and subject to differing and potentially changing evaluations based on various factors." *Id.* at 812–13. These factors include, for

---

insurers did not pay her for any portion of those undisputed economic damages. *Id.* at 810. Plainly, under *Fisher II*, failure to pay the undisputed medical bills would amount to bad faith under Colorado law. 418 P.3d at 505. It also amounts to bad faith under Arizona law. *See Voland*, 943 P.2d at 812. However, this was not the issue in *Voland*, because plaintiff instead based her bad faith claim on the insurers' failure to tender $30,000 as the alleged minimum "fair value" of her claim. *Id.* at 810.

example, "any liability issues (including negligence and causation); the claimant's out-of-pocket expenses, or 'special damages'; up-dated medical reports or discovery of old medical records showing pre-existing injury or prior claims; evidence of malingering, subsequent accidents or new injuries; qualifications, appearance and demeanor of the claimant and his or her witnesses; reputation and effectiveness of counsel; findings from any surveillance efforts; and selection and background of the arbitrators." *Id.* at 813 n.3. Given the nature of the damages at issue, "any obligation the carriers had to gratuitously pay plaintiff [UIM] benefits in advance for her special damages was, as a matter of law, 'fairly debatable.'" *Id.* at 814.

The *Voland* analysis applies with equal force in this case. Here, the claim evaluation informed the settlement range for Mr. Hallaren's noneconomic and future, undetermined medical damages, and included a variety of other factors that are, by their very nature, subjective. The settlement offers and the underlying evaluation were prepared simply to aid in reaching a compromise and are not binding on the Insurer. As in *Voland*, there is no claim that the Insurer improperly conducted the investigation or engaged in other questionable tactics—the sole evidence suggesting bad faith is the failure to tender some minimum amount for non-economic and future, undetermined medical bills identified in the Insurer's claim evaluation. This cannot form the basis of a bad faith claim.

Finally, the Court agrees with the Insurer that public policy weighs in favor of prohibiting the exclusive use of a claim evaluation to prove the existence of an undisputed amount of noneconomic damages so as to require a *Fisher* payment. No matter the amount of non-economic damages tendered by the insurer, the insured

would still be free to pursue extra-contractual liability on the *subjective* argument that

the tendered amount was "too low." As the *Voland* court explained,

> [i]f, in order to avoid a bad faith claim, UM carriers were obligated to pay the amount of their lowest settlement offer without obtaining any release and before any arbitration hearing or award, they would have little if any incentive to settle. Imposing such a requirement would have a chilling effect on genuine settlement evaluations and negotiations. The effect would be to deter settlement and foster litigation, whereas our system of justice encourages settlement and discourages litigation.

*Voland*, 973 P.2d at 812. This reasoning is sound and consistent with the articulated

public policy of the state of Colorado, which explicitly favors settlement. *See Gates

Corp. v. Bando Chem. Indus., Ltd.*, 4 Fed.Appx. 676, 682 (10th Cir.2 001) ("Colorado

public and judicial policies favor voluntary agreements to settle legal disputes");

*Hernandez*, 154 P.3d at 1071–72 (noting Colorado's policy of "'secur[ing] the just,

speedy and inexpensive determination of every action'") (quoting C.R.C.P. 1(a)); *Smith

v. Zufelt*, 880 P.2d 1178, 1185 (Colo. 1994) ("When considering alternative

consequences, we will defer to results that encourage the settlement of disputes.");

*Yaekle v. Andrews*, 169 P.3d 196, 200 (Colo.App.2007) (noting Colorado's "strong

policy favoring dispute resolution rather than continued litigation"), *aff'd*, 195 P.3d 1101

(Colo. 2008).

The Court acknowledges that Judge Moses of the Denver District Court recently

reached the opposite conclusion in *Fear v. Geico Casualty Co.*, Case No.

2020CV32188 (Denver Dist. Ct., July 26, 2021) (filed at Dkt. #32-4). After a bench trial,

Judge Moses found that the defendant-insurer's evaluation of the plaintiff's non-

economic damages was "distinct from [the insurer]'s settlement analysis, settlement

authority and settlement proposals." Judge Moses relied on the claim evaluation to find

that the insurer owed the plaintiff a minimum of $3,961 in undisputed UIM benefits, which she calculated by subtracting $25,000 (the amount previously paid by the tortfeasor's policy) from the insurer's $28,961 valuation ($21,761.00 for undisputed economic damages plus $7,200 in minimum evaluated economic damages). *Id.* She therefore found that the insurer unreasonably delayed payment of covered benefits in violation of Colo. Rev. Stat. § 10-3-1115 & -1116. *Id.* However, she found the plaintiff failed to meet the higher burden of proving his common law bad faith claim, which required that the insurer knew or recklessly disregarded the fact that its position was unreasonable. *Id.*

*Fear* appears to be the only case holding that an insurer can be held liable for bad faith unreasonable delay or denial by failing to make a *Fisher* payment on supposedly undisputed non-economic damages, proven by reference to the insurer's internal claim evaluation. Respectfully, the Court is not bound the decision of a state court trial judge. As the Tenth Circuit has cautioned, an "unreported, unpublished decision from one of the many Colorado district courts is of little value in considering what course the Supreme Court of that state would take." *State Farm Mut. Auto. Ins. Co. v. Travelers Indem. Co.*, 433 F.2d 311, 312 (10th Cir. 1970); *see also King v. Order of United Commercial Travelers of Am.*, 333 U.S. 153, 160–61 (1948) (holding that in applying South Carolina state law, the United States Circuit Court of Appeals was justified in holding that the unreported decision of a South Carolina trial court was not controlling and in making its own determination of how the Supreme Court of South Carolina would probably rule in a similar case). The holding in *Fear* is contradictory to the directive found in *Sunahara*, and the Court will instead follow the weight of authority,

including from its District of Colorado federal court colleagues, suggesting that claim evaluations are part and parcel of settlement discussions and are not admissible evidence of undisputed amounts.

Therefore, the Court finds that, under Colorado law, an insurer's internal claim evaluation of non-economic damages is not evidence of an undisputed amount which must be paid per the reasoning in *Fisher II*.  Mr. Hallaren's bad faith claims in this case are premised solely on the claim evaluation, so summary judgment must be granted in the Insurer's favor on those claims. Given this disposition, the Court need not decide whether, for purposes of making a *Fisher* payment, non-economic damages can ever be deemed "undisputed" given their subjective nature.

## CONCLUSION

After considering decisions by lower courts in Colorado, appellate decisions in other states with similar legal principles, and decisions in this District interpreting the law of Colorado, the Court finds that an insurer's evaluation of the non-economic damages of a claim does not constitute evidence of an undisputed amount which must be paid under the Supreme Court's *Fisher II* decision. Therefore, there are no genuine disputes of material fact and the Insurer had no obligation to provide payment based on its settlement offers or claim evaluation. Because there are no facts to support Mr. Hallaren's claims that the Insurer's conduct was unreasonable, the Insurer is entitled to judgment as a matter of law.

Accordingly, it is hereby **ORDERED** that the Insurer's Motion for Summary Judgment (Dkt. #13) is **GRANTED.**

Date: September 10, 2021

_____

N. Reid Neureiter
United States Magistrate Judge